IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMPROVED SEARCH LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-262-SLR |
| | ) |
| AOL, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 30th day of March, 2017, having heard argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of U.S. Patent Nos. 6,604,101 ("the '101 patent") and 7,516,154 ("the '154 patent")[1] shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

---

[1] The '154 patent is a continuation-in-part of a divisional of the '101 patent.

1. **"Translating:"**[2] "Changing text from one language into an equivalent text in a different language." The specification describes that "a need exists for a translingual search engine with a built-in translator. Such a system should be capable of standardizing the query or phrase input by the user to a commonly known word and then translating the same into a target language prior to a search for sites that satisfies the search criteria." ('101 patent, 2:45-50)

2. **"Second language:"**[3] "Language different from the first language."[4]

3. **"Contextual search:"**[5] "Identification of web documents and web site names (URLs) based on words contained in the documents."[6] The '101 patent explains that

---

[2] Found in '101 patent, claim 1; '154 patent, claim 1.

[3] Found in '101 patent, claims 1, 5, 24, 27, and 28; '154 patent, claim 1.

[4] Plaintiff proposed a construction that also "includ[ed] different dialects of the first language." The dependent claims of the '101 patent identify second languages such as "English" and "Chinese" but do not identify dialects as second languages. ('101 patent, 8:23-26; 9:27-30) The specification describes that "[a] language such as English itself is full of dialectal variations in the form of British English and American English to name a few." ('101 patent, 5:38-40) "Similar instances could be cited in many of the other languages of the world, too. In Chinese, for instance there are as many as 41 different dialectal variations for just one particular word." (Id., 5:43-47)

[5] Found in '101 patent, claims 1 and 24; '154 patent, claim 1. The parties had included the term "contextually searching," but this term does not appear in the aforementioned claims.

[6] Plaintiff sought a construction in which the search identifies "documents from the domain-unlimited set of documents available on the World Wide Web." (D.I. 75 at 2) Defendant argued that "documents" must come "from an external set of unidentified documents, not a pre-identified set of documents." (Id.) In support, defendant cites to the "said web documents" term in independent claim 23 of the '101 patent. (D.I. 62 at 12; '101 patent, 10:30) The antecedent basis for "said web documents" is "searching and retrieving documents in the second language." ('101 patent, 10:28-29) This earlier term supports the (contrary) argument that applicant intended the second-language search to return web documents. Defendant contends that, in distinguishing the Redpath reference during prosecution, the "applicant never suggested that the [contextual search] term was meant to distinguish searches based on the **source** of the documents to be searched, such as a search for Web documents." (D.I. 62 at 13 (emphasis in original)) In fact, this is precisely what applicant argued to the examiner

2

the "invention relates generally to translation of query and retrieval of multilingual information **on the web** and more particularly to a method and system for conducting a translingual search **on the Internet** and accessing multilingual web sites through dialectal standardization, pre-search translation and post-search translation." ('101 patent, 1:9-14 (emphasis added)) The disclosed prior art consists solely of web search engines and tools. (*Id.* at 1:25-2:44) The specification discusses search results as within the scope of the web: "[t]he search results obtained may be of many different kinds such as titles/catalogs along with their URL links or actual web sites or web pages with contents or even subpages with title along with their URL links. The search results obtained may be any or all of these." ('101 patent, 6:17-22; *see also* '154 patent, 6:10-14) Nothing in the '101 or '154 patents or the prosecution history suggests that the search is limited to specific groups of documents on the Internet or the World Wide Web.

4. **"Dialectal standardization of the at least one content word extracted from the query:"**[7] "Replacing the at least one content word in the first language with a commonly-known word in the first language so that the second-language search engine will recognize it."[8] **"Dialectal standardization of the content word extracted from**

---

when it explained that it had amended independent claims 1, 9, 12, 19, 22, and 23 "to further distinguish a feature of the present invention allowing input of a query in a first language or source language and a **contextual search** of the Internet in a second or target language." (D.I. 64, ex. 3 at 126 (emphasis in original)) Moreover, applicant explained that Redpath teaches "providing the most up-to-date translation of a requested document and not a contextual search over a network such as the Internet." (*Id.*) These references to Internet searches match the disclosure in the specification. Defendant contends that "applicant affirmatively broadened its claims" by, inter alia, changing the title of the patent. (*Id.* at 13-14) These facts do not support broadening. *See, e.g.,* § 1412.03 MPEP (9th ed., Rev. 07.2015, Nov. 2015).

[7] Found in '101 patent, claim 1.

[8] The specification uses the term "standardizing," which the parties proposed be replaced with "to map" (plaintiff) and "changing" (defendant).

3

**the query:"**[9] "Replacing the content word in the first language with a commonly-known word in the first language so that the second-language search engine will recognize it." **"Dialectally standardized content word:"**[10] "The commonly-known word in the first language selected so that the second-language search engine will recognize it." The '101 patent explains that dialectal standardization is "distinctly helpful because standardizing the word to a commonly known word insures that the search engine of the target language will recognize it." ('101 patent, 3:29-32; '154 patent, 1:46-47; see also '101 patent, 2:46-49, 3:49-53, 4:22-29, 5:30-35, 5:46-49, 7:13-16) The specification describes further that:

> A language such as English itself is full of dialectal variations in the form of British English and American English to name a few. Good examples of dialectal variations in these two dialects of English include centre vs. center, lorry vs. truck, queue vs. line and petrol vs. gasoline etc. Similar instances could be cited in many of the other languages of the world, too. In Chinese, for instance there are as many as 41 different dialectal variations for just one particular word. Such instances corroborate the fact that dialectal variations are the rule rather than the exception and therefore the only way to counter them is by standardizing a query or a word to a commonly known word.

('101 patent, 5:38-49) Dialectal standardization "is done to bring about a consistency in the meaning of a word notwithstanding dialectal variations." (*Id.* 5:33-35) In other words, dialectal standardization is not limited to standardizing from one dialect to another (e.g., "lorry" to "truck"), "[f]or instance, different variants of the word 'auto' including automobile and transportation vehicle are permitted to be input by the user as part of the dialectal standardization process." (*Id.* at 5:64-67) The specifications refer to "source" and "target" languages, but claim 1 of the '101 patent and claim 1 of the '154 patent employ "first language" and "second language" terms. (*Id.*, 8:1-2, 8:9, 8:12-13;

---

[9] Found in '154 patent, claim 1.

[10] Found in '101 patent, claim 1; '154 patent, claim 1.

4

'154 patent, 10:9, 10:14-15, 10:18) The specification explains that keywords in a first (or source) language are dialectally standardized before being translated into a second (or target) language, which is used for the contextual search. ('101 patent, 5:24-67, 6:3-22, 7:1-23, figure 3) The claims use the term "content word" to describe what is "extracted from the query" and is then dialectally standardized.[11] ('101 patent, 8:6; '154 patent, 10:10-11)

    5. The court has provided a construction in quotes for the claim limitations at issue. The parties are expected to present the claim construction consistently with any explanation or clarification herein provided by the court, even if such language is not included within the quotes.

_[signature]_<br>
Senior United States District Judge

---

[11] Defendant's proposed addition of "if such a word is identified" is extraneous, because it excludes embodiments already outside the scope of the claim. (D.I. 74 at 4-6; see also 35 U.S.C. § 112, ¶ 2)